# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### September 1, 2010 Session

## JENNIE F. INGRAHAM v. PATRICK GARRETT INGRAHAM

**Appeal from the Chancery Court for Hamilton County**
**No. 07-0864      Howell N. Peoples, Chancellor**

**No. E2010-00101-COA-R3-CV - FILED DECEMBER 8, 2010**

After eighteen years of marriage, Jennie F. Ingraham ("Wife") sued Patrick Garrett Ingraham ("Husband") for divorce. After a trial, the Trial Court entered its Final Judgment on December 7, 2009, *inter alia*, granting Wife a divorce and dividing the marital property. Husband appeals to this Court raising issues regarding the valuation and distribution of the marital property. Wife raises additional issues concerning the property distribution and attorney fees. We affirm as to the Trial Court's valuation of items of marital property, the determination that the Exxon stock is Husband's separate property, and the denial of an award to Wife of attorney's fees. We, however, remand this case for proof on the issue of whether Husband's combined SEP and IRA fall under the definition contained in Tenn. Code Ann. § 36-4-121(b)(1)(B) pursuant to our Supreme Court's Opinion in *Snodgrass v. Snodgrass*, 295 S.W.3d 240 (Tenn. 2009).

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed, in part, and Case Remanded for further proceedings**

D. MICHAEL SWINEY, J. delivered the opinion of the Court, in which JOHN W. MCCLARTY, J., and NORMA MCGEE OGLE, SP. J., joined.

Phillip C. Lawrence, Chattanooga, Tennessee, for the appellant, Patrick Garrett Ingraham.

Selma Cash Paty, Chattanooga, Tennessee, for the appellee, Jennie F. Ingraham.

# OPINION

## Background

Wife and Husband were married to one another in June of 1987 and were divorced in December of 1987. Wife and Husband remarried in January of 1989. No children were born of the marriage.[1] Wife filed for divorce in October of 2007. The case was tried in October of 2009.

Wife, who was born in 1962, has one adult daughter from a previous marriage. Wife was a licensed practical nurse when she first married Husband. In 1992, Wife went back to school, obtained a degree, and became a registered nurse. Wife testified at trial that she worked during the marriage except for a period of approximately three months while she was in school.

Prior to the marriage, Wife had an IRA of approximately $3,000 with Athens Community Hospital. Wife testified that her IRA was worth approximately $34,000 at the time of trial. Wife testified that during the marriage Husband put Wife's name on a cash management account, and on a $100,000 CD. Wife testified that the Citizens cash management account contained approximately $26,000 at time of the filing of the divorce. She further testified that the parties have a joint account at BB&T, and that they both put money into this account in the past but that Husband has not put any money into it since around 2006. The parties also had a lockbox where Husband kept cash, but Wife never went to the lockbox with Husband. She testified:

> Well, exactly his words to me, he said, I know I'm not supposed to keep a lot of cash in the lock box. He said it's not legal. He said, but I'm going to and there were times we would have 30,000, 40,000 in there and, of course, I never one time went to the lock box with him. And then he would tell me occasionally, I'm taking five out for this, I'm going to take two out for that, so I never really knew where that money was going or where it went to except him telling me.

When asked, Wife agreed that $51,000 in Husband's SEP IRA is Husband's pre-marital separate asset.

Wife testified that Husband put her name on his inherited Exxon stock in 2004.

---

[1]When we refer to the marriage in this Opinion we are referring to the marriage at issue in this case, i.e., the parties' second marriage to one another, unless otherwise noted.

With regard to the Exxon stock Wife testified: "He said, I know that you have been wanting to put a stock portfolio together and he said, you know, I have several stocks and he said, I would like for you to have the Exxon stock." The Exxon stock was put into a Raymond James account in both their names.

Husband told Wife in 2007 that he wanted her out of his home. Husband asked Wife to sign a paper with regard to the Exxon stock when he asked her to leave, but Wife refused. Wife stated:

> In 2007 when he asked me to leave, he came and woke me up and he said, here's a piece of paper. I wasn't awake yet. He said, I want you to sign right here. I said, what is this? I said, I need to talk to Ms. Paty first. He said, it's taking your name off this Exxon stock. He said, if I knew you were going to leave me, he said, I might not have been so generous and I said, I'm not signing anything until Ms. Paty approves it. And then he came a second time within a few weeks. He was very angry. He said, sign this paper now and I said, no, I won't. I said, I'm going to talk to Ms. Paty and if she tells me to sign it, I'll do it, but I said, I don't understand. A gift is a gift, Patrick. And he said, yeah, but I didn't know you were going to leave me when I did this.

At the time of trial, Wife worked at Erlanger. Wife has a Metlife pension with Erlanger with an approximately value of $9,500. Wife earned approximately $47,000 during the first nine months of 2009.

Glenna Gilliam, a customer service representative who works at Citizens National Bank in Athens, Tennessee testified at trial. Ms. Gilliam has worked for Citizens National Bank for approximately 40 years. Ms. Gilliam explained that she opens new accounts and handles CDs and IRAs. Husband has been a customer of the bank since the early 1980s, and Ms. Gilliam testified that she has handled Husband's business.

Ms. Gilliam produced some bank records of Husband's CDs beginning in 1992. Earlier records could not be produced as they had been damaged by fire and water. Ms. Gilliam testified, however, that "[Husband has] always had CDs with us.... As long as I've dealt with him. As long as I've dealt with him. That's over 25 years maybe." Husband does not cash-out the CDs, but keeps rolling them over making withdrawals of interest on a monthly basis. Husband puts the interest into a cash management interest bearing checking account. Ms. Gilliam explained that one CD is in Husband's name and another is payable to Wife upon Husband's death. Husband also has IRAs at the bank that are invested in an IRA CD. The IRA CD has a value of approximately $217,500. Ms. Gilliam testified that Husband also had a SEP account that was combined into the IRA CD in 2006. Both the IRA

and the SEP IRA were in existence in 1988.

Gail Johnston Guinn, another customer service representative at Citizens National Bank in Athens, Tennessee, also testified at trial. Ms. Guinn has worked at Citizens National Bank for 21 years. She has handled some sales of stock for Husband. Ms. Guinn testified:

> I was the sales assistant for Raymond James Financial Services, which is a brokerage house that we had a broker in-house and I assisted him. And what I did was would be to take the stocks in. We would online sell and put it into the customer[']s account and there was paperwork that went along with that. I think you may have copies of all that.

Ms. Guinn testified about the Exxon shares stating:

> The stock certificate was in several shares and he - - it was in his name and he deposited it into a joint account and there would have been a form that he had to sign to do all that and we took the certificate, had that signed form and we UPS overnighted down to the home office which is in St. Petersburg, Florida and at the same time we went online to sell whatever he requested of us to sell.

Ms. Guinn stated that Husband told her to sell 400 shares of Exxon stock out of the 1,400 he held. Husband wanted a certificate for a thousand shares back. Ms. Guinn was asked if Husband filled out a form in order to sell the stock and she stated: "Yes. There had to be a form. Because it was a joint account, there had to be a form submitted with both names on it for it to come out in [Husband's] name and I don't have that form." Ms. Guinn issued the sale online for the 400 shares. Ms. Guinn explained that the shares had to be deposited into an account at Raymond James in order to be bought or sold. Husband and Wife had a joint account at Raymond James.

Ms. Guinn testified that the 1,000 shares of Exxon stock were not returned to Husband after the sale even though he had requested it. She stated: "Because the form was not duly signed by [Wife]. It has to be signed by both parties since it's joint for it to come out. The request has to be made on paper." When asked, Ms. Guinn testified that Husband had an individual account for a long time, and she agreed that the joint account was in both names because Husband had opened it that way.

Husband is an attorney who was born in November of 1946. He testified at trial with regard to the Exxon stock stating:

I gave [Ms. Guinn] the certificate in February, I believe, of '07 to hold in the bank vault and I said I'm watching the stock and when it gets to the value that I want, I want to sell 400 shares of it and I want - - when I sell the 400, I want a thousand shares back in my name in a certificate form and she took the certificate, signed a note and then in April the stock was up to about $80 a share and I said I think it's time that - - it's a good time to sell, so we sold the 400 shares.

Husband deposited the money from the sale of the Exxon stock into the parties' cash management account. He admitted that he intended for this money to be joint property, but stated he did not intend to make a gift of the remaining 1,000 shares of stock to Wife. Husband explained that he discovered when it came time to get the certificate for the remaining 1,000 shares that because he had sold through a joint account Wife also would have to sign the form. Wife refused to sign. Husband further explained that he and Wife were talking about divorce at that time. Husband instructed the bank not to reissue the stock certificate but to leave the stock where it was. He stated: "it was always my intent to get my stock back and I said don't issue it in joint names, don't issue anything, just leave it like it is."

Husband testified that there was $10,000 in the parties' lockbox around the time the divorce was filed. Husband stated that the most money that was ever in the lockbox at any one time was $20,000. When asked, Husband stated that the money in the lockbox:

It came from the sale of my office furniture. Okay. It came from the sale of some guns that I had, the sale of Cloisonne clock, a Chinese clock. It was a table clock. The sale of some dining room furniture, the sale of some - - like a china cabinet. They called it a break front and a cabinet and some rugs.

Husband testified that he sold all of his office furniture with the exception of a typewriter and, when asked how much he was paid for these items he stated: "I think $750." Husband's Asset and Liability Statement filed as an exhibit at trial stated that there was $2,000 in cash in the lockbox.

The Trial Court entered its Final Judgment on December 7, 2009 awarding Wife a divorce, and finding and holding, *inter alia*:

5. The following items are confirmed as the separate property of [Husband] and not subject to division in this case as marital property:

a. [Husband's] quantities of ownership of shares of stock as follows: …

-5-

1,000 shares ExxonMobil Corporation, ….

\* \* \*

e.  a share of $51,000 of the value of the Citizens National Bank certificate of deposit representing [Husband's] combined IRA and Simplified Employee Pension ("SEP IRA"); .…

\* \* \*

6. [Wife] is awarded as her equitable share of the marital estate, the following:

\* \* \*

d.  the sum of $50,000 from the certificate of deposit at Citizens National Bank representing the combined values of [Husband's] IRA and SEP IRA;

\* \* \*

f.  the sum of $13,000 from [Husband] representing one-half of the cash balance of Citizens National Bank Money Market Account … at the time of separation;

g.  the sum of $5,000 from [Husband] representing cash from the safe deposit box;

Husband appeals to this Court, and Wife raises additional issues.

## Discussion

Although not stated exactly as such, Husband raises four issues on appeal: 1) whether the Trial Court erred in classifying and valuing the marital portion of Husband's combined SEP and IRA; 2) whether the Trial Court erred in valuing the parties' joint bank account; 3) whether the Trial Court erred in valuing Wife's pension plan; and, 4) whether the Trial Court erred in finding that the cash in the lockbox was marital property and in valuing it. Wife raises two additional issues which we restate as: 1) whether the Trial Court erred in finding that the 1,000 shares of Exxon stock was Husband's separate property; and, 2) whether the Trial Court erred in refusing to order Husband to pay Wife's attorney's fees. Wife also requests an award of attorney's fees on appeal.

-6-

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

We first address whether the Trial Court erred in classifying and valuing the marital portion of Husband's combined SEP and IRA. In essence Husband argues that the outcome with regard to his combined SEP and IRA should have been different under the analysis set forth by our Supreme Court in *Snodgrass v. Snodgrass*, 295 S.W.3d 240 (Tenn. 2009).

In *Snodgrass*, our Supreme Court discussed Tenn. Code Ann. § 36-4-121(b)(1)(B), which provides:

> (B) "Marital property" includes income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation, and the value of vested and unvested pension, vested and unvested stock option rights, retirement or other fringe benefit rights relating to employment that accrued during the period of the marriage.

Tenn. Code Ann. § 36-4-121(b)(1)(B) (2005). The *Snodgrass* court instructed:

> If a contested piece of property fits within the second clause of (b)(1)(B), then the *entire* net increase in value of that property that accrues during the marriage, through whatever means or methods, is deemed marital, even if the property contains an element of separate property.
>
> If, however, the property at issue does not fit within this second clause and is otherwise deemed to be separate, any income from or appreciation of the property will remain separate unless a court finds sufficient evidence to support a theory of substantial contribution, commingling, transmutation, gift to the marital estate, or some other theory by which otherwise separate property may be deemed marital.

*Snodgrass*, 295 S.W.3d at 248-49 (citations and footnote omitted).

Husband argues that the increase in value of his combined SEP and IRA does

not fit under the second clause of Tenn. Code Ann. § 36-4-121(b)(1)(B) and, therefore should not have been characterized and distributed as marital property as the Trial Court did. In his brief on appeal, Husband argues: "Husband's IRA and SEP is not a 'retirement or other fringe benefit rights relating to employment' under Tenn. Code Ann. § 36-4-121(b)(1)(B) because, being self-employed as Husband was, the fund has none of the attributes of such a plan where the existence of an 'employer' is a required element." Wife's brief on appeal asserts that the Trial Court was correct in its holding regarding the increase in value, but that the Trial Court erred in not awarding Wife 50% of this asset.

The *Snodgrass* opinion was filed just before the trial of the instant case was concluded, after Wife had rested her case and after Husband had presented several of his witnesses. *Snodgrass*, 295 S.W.3d at 240. Understandably, no proof was presented at trial as to whether *Snodgrass* applied to the facts in this case. Our Supreme Court noted in *Snodgrass* that IRA accounts may be related to employment, but may also be held solely in an individual capacity. *Snodgrass*, 295 S.W.3d at 254 n.12. The record now before us reveals that Husband was self-employed during the relevant time period.

We, however, are unable to determine from the record before us whether the increase in value in Husband's combined SEP and IRA should have been characterized as marital property pursuant to *Snodgrass* and Tenn. Code Ann. § 36-4-121(b)(1)(B), or not. We, therefore, remand this case to the Trial Court to take proof relevant to the issue of whether the increase of value in Husband's combined SEP and IRA fits under Tenn. Code Ann. § 36-4-121(b)(1)(B) pursuant to *Snodgrass*. Once the Trial Court has made this determination, it may redistribute the martial property if the Trial Court finds it necessary to do so to reach an overall equitable distribution of the marital property.

As for Wife's argument on this issue, we point out that a trial court has wide discretion in dividing the interest of the parties in marital property. *Barnhill v. Barnhill*, 826 S.W.2d 443, 449 (Tenn. Ct. App. 1991). As noted by this Court in *King v. King*, when dividing marital property:

> The trial court's goal in every divorce case is to divide the parties' marital estate in a just and equitable manner. The division of the estate is not rendered inequitable simply because it is not mathematically equal, *Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn. 1996); *Ellis v. Ellis*, 748 S.W.2d 424, 427 (Tenn. 1988), or because each party did not receive a share of every item of marital property. *Brown v. Brown*, 913 S.W.2d [163] at 168.... In the final analysis, the justness of a particular division of the marital property and allocation of marital debt depends on

its final results. *See Thompson v. Thompson*, 797 S.W.2d 599, 604 (Tenn. App. 1990).

*King v. King*, 986 S.W.2d 216, 219 (Tenn. Ct. App. 1998) (quoting *Roseberry v. Roseberry*, No. 03A01-9706-CH-00237, 1998 WL 47944 (Tenn. Ct. App. Feb.9, 1998), *no appl. perm. appeal filed*). The fact that Wife was not awarded 50% of this asset does not make the overall property distribution inequitable.

Husband's second and third issues assert that the Trial Court erred in the valuation of specific items of marital property. Husband, however, has missed the point. Valuation of marital property is not an exact science. The overriding task for a trial court is not to value each item of marital property exactly correctly, but rather to assign values in order to allow the court to make an overall equitable distribution of the martial property. "In the final analysis, the justness of a particular division of the marital property and allocation of marital debt depends on its final results." *Id*. We find no error in the Trial Court's valuations. On remand the parties may not produce further evidence regarding the valuation of items of marital property except as to Husband's combined SEP and IRA.

We turn now to Husband's issue regarding whether the Trial Court erred in finding that the cash in the lockbox was marital property and in valuing it. In his brief on appeal, Husband argues that "[t]here was no testimony of Husband having disposed of any marital property, and because the remaining cash funds in the lock box of $2,000 was listed on Husband's Asset and Liability Statement (Exhibit 53) as separate property, the record establishes that the funds in the lock box were Husband's separate property." We disagree that the listing of $2,000 on Husband's Asset and Liability Statement conclusively established that this money was Husband's separate property.

The record reveals that Wife testified that she never went to the lockbox with Husband and that at times there was $30,000 to $40,000 in the lockbox. Husband testified that there was $10,000 in the lockbox around the time the divorce was filed and that the most money that was ever in the lockbox at any one time was $20,000. While Husband testified that the money in the lockbox came, in part, from the sale of his office furniture, Husband, however, also stated that he only received $750 from the sale of his office furniture. Husband never established that the other funds in the lockbox were his premarital separate property and the record does not support such an assertion.

As the cash in the lockbox was not shown to be Husband's separate property, we find no error in the Trial Court's classification of this cash as marital property. Furthermore, the Trial Court clearly made a credibility determination when it chose not to believe the assertion on Husband's Asset and Liability Statement and instead credited the

testimony given on this issue. We find no error in the Trial Court's valuation and distribution of this asset.

We turn next to Wife's issue regarding whether the Trial Court erred in finding that the 1,000 shares of Exxon stock were Husband's separate property. Wife argues on appeal that Husband transmuted the Exxon stock from his separate property into marital property when he placed it into the parties' joint account.

Our Supreme Court discussed the concepts of marital property and separate property in *Langschmidt v. Langschmidt* and noted that in addition to the statutory provisions contained in Tenn. Code Ann. § 36-4-121(b), Tennessee intermediate appellate courts have recognized two methods by which separate property may be converted into marital property. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 747 (Tenn. 2002). These two methods are commingling and transmutation, which the Supreme Court noted have been described by this Court as follows:

> [S]eparate property becomes marital property [by commingling] if inextricably mingled with marital property or with the separate property of the other spouse. If the separate property continues to be segregated or can be traced into its product, commingling does not occur.... [Transmutation] occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property.... The rationale underlying these doctrines is that dealing with property in these ways creates a rebuttable presumption of a gift to the marital estate. This presumption is based also upon the provision in many marital property statutes that property acquired during the marriage is presumed to be marital. The presumption can be rebutted by evidence of circumstances or communications clearly indicating an intent that the property remain separate.

*Langschmidt*, 81 S.W.3d at 747 (citations omitted).

With regard to this issue, the Trial Court specifically found:

> The Court also finds, based on the evidence, that includes the testimony of these parties and the testimony of Ms. Guinn from Citizen's National Bank, that the stocks that include Exxon Mobile are in fact the separate property of [Husband].

The Trial Court obviously found Husband to be more credible with regard to this issue, and the Trial Court clearly found that Husband had rebutted the presumption that Husband was making a gift to the marital estate of the Exxon stock by placing it into a joint account. The evidence does not preponderate against this finding.

We next consider whether the Trial Court erred in refusing to order Husband to pay Wife's attorney's fees. An award of alimony in solido for payment of attorney fees should be based on the factors set forth in Tenn. Code Ann. § 36-5-121(i), and is appropriate when the spouse seeking attorney fees does not have adequate funds to pay his or her legal expenses. *Yount v. Yount*, 91 S.W.3d 777, 783 (Tenn. Ct. App. 2002). Conversely, a spouse with sufficient property or income to pay his or her attorney fees is not entitled to be compensated. *Koja v. Koja*, 42 S.W.3d 94, 98 (Tenn. Ct. App. 2000).

In the case now before us, the Trial Court specifically found that Wife "is capable of paying her attorney's fees from her earnings…," and, therefore, Wife had not shown a need for an award of attorney's fees. The evidence does not preponderate against this finding. We find no error in the Trial Court's refusal to order Husband to pay Wife's attorney's fees.

In the exercise of our discretion we decline to award either party attorney's fees on appeal.

## Conclusion

Except for the issue remanded to the Trial Court, the judgment of the Trial Court is affirmed. This cause is remanded to the Trial Court for further proceedings, proof, and findings on the issue of whether Husband's combined SEP and IRA fall under the definition contained in Tenn. Code Ann. § 36-4-121(b)(1)(B) pursuant to our Supreme Court's Opinion in *Snodgrass v. Snodgrass*, 295 S.W.3d 240 (Tenn. 2009). Depending upon the Trial Court's determination as to this issue concerning Husband's combined SEP and IRA, the Trial Court then will need to decide whether to revise its property division so as to achieve an equitable division of the overall marital estate. The costs on appeal are assessed one-half against the appellant, Patrick Garrett Ingraham, and his surety; and one-half against the appellee, Jennie F. Ingraham.

_____
D. MICHAEL SWINEY, JUDGE